IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JAMIE WHITFIELD                                                       PLAINTIFF

v.                                                      CIVIL ACTION NO. 1:16-cv-00051-GHD-DAS

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY                                           DEFENDANT

**MEMORANDUM OPINION DENYING IN PART AND HOLDING IN ABEYANCE IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND HOLDING IN ABEYANCE DEFENDANT'S MOTION TO BIFURCATE PROCEEDINGS**

Presently before the Court are the following motions filed by Defendant Allstate Vehicle and Property Insurance Company: a *Daubert* motion to strike expert designation and testimony of Plaintiff Jamie Whitfield's experts Kevin Senter and Johnny Harber [61]; a motion for summary judgment or, in the alternative, for partial summary judgment [63]; and a motion to bifurcate proceedings [65]. Upon due consideration, the Court finds that the motion for summary judgment [63] must be granted in part and held in abeyance in part, and the motion to bifurcate proceedings [65] must be held in abeyance. The *Daubert* motion to strike Plaintiff's experts shall be scheduled for an appropriate pretrial hearing.

*I.    Factual and Procedural Background*

Plaintiff Jamie Whitfield ("Plaintiff") purchased homeowner's insurance policy number 995 646 873 from Defendant Allstate Vehicle and Property Insurance Company ("Allstate") to insure his home in Iuka, Mississippi; the replacement cost value, as stated in the subject policy, is $355,563.00. Pl.'s Compl. [1] ¶¶ 4–5; Allstate's Answer & Aff. Defenses [8] ¶¶ 4–5; Subj. Policy [8-1] at 5. On or about December 19, 2014, Plaintiff suffered a fire loss at his home. Pl.'s Compl. [1] ¶ 4; Allstate's Answer & Aff. Defenses [8] ¶ 4. Plaintiff filed an insurance

1

claim, contending that the fire rendered his home a total loss and that he was entitled to the replacement cost value stated in the subject policy, $355,563.00. Allstate paid $132,612.49 on the claim. On March 23, 2016, Plaintiff filed this wrongful and bad faith denial of insurance coverage case against Allstate based on diversity jurisdiction. On May 17, 2016, Allstate filed its answer and affirmative defenses [8]. The parties engaged in extensive discovery. Subsequently, on April 18, 2017, Allstate filed the present motion to strike expert designation and testimony of Plaintiff's experts Kevin Senter and Johnny Harber [61]; motion for summary judgment or, in the alternative, for partial summary judgment [63]; and motion to bifurcate proceedings [65]. Plaintiff filed responses, and Allstate filed replies in support of the three motions.

In the case *sub judice*, the parties dispute the extent of the fire loss to Plaintiff's home, as well as whether Allstate insured the property appropriately or in excess of fair market value in violation of Mississippi law.

Plaintiff alleges that his home was "totally destroyed with no usable remnant that would have been reasonable or feasible to repair and reconstruct." Pl.'s Compl. [1] ¶ 6. Plaintiff further alleges that "Allstate has only made partial payments in the sum of $132,612.49 to [Plaintiff] or less than 40% of the [subject] coverage." *Id.* Plaintiff avers that Allstate, "acting with actual malice or gross negligence, has wrongfully and in bad faith denied full coverage and full payment for the fire loss claim without a reasonable basis . . . ." *Id.* Plaintiff seeks contractual damages "in the amount of at leas[t] $225,950.00, representing the difference between replacement cost coverage in the [subject] policy and prior partial payments," as well as "punitive damages as a result of [Allstate's] bad faith denial of the claim for full benefit of the [subject] policy." *Id.* ¶ 7.

2

Allstate argues that following its investigation into the fire and damage, Allstate determined that the fire was incendiary and that Plaintiff's home was repairable. Allstate maintains that it has paid all amounts due and payable under the subject policy. Allstate further maintains that its estimated repair cost was $120,266.72; that Allstate tendered a check in that amount to Plaintiff; and that Plaintiff accepted and cashed the check. Allstate's Mem. Br. Supp. Mot. Summ. J. [64] ¶¶ 5–6. Allstate argues that Plaintiff subsequently submitted additional invoices for "building material on site at the time of the fire, but not yet installed" to include an additional $12,345.77, and that Allstate issued a check to Plaintiff in the amount requested. *Id.* ¶ 8. Allstate denied Plaintiff's insurance claim for the total replacement value of the home, but advised Plaintiff that if he decided to rebuild his home he could be entitled to make an additional claim for the "recoverable depreciation amount of $29,547.05." *Id.* Allstate maintains it has paid Plaintiff a total of $132,612.49 under Coverage A (dwelling coverage); $40,145.26 under Coverage B (personal property coverage); and $5,000.00 in advance payments. *Id.* ¶ 9. Allstate further maintains that it tendered $4,353.72 to Plaintiff based on an estimate of mold remediation from ServPro of Tupelo. *Id.* ¶ 10.

## *II.    Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### *III. Analysis and Discussion*

Allstate argues in its motion for summary judgment or, in the alternative, partial summary judgment [63] that summary judgment is appropriate on all claims asserted in the case *sub judice* because the subject loss is repairable, and alternatively, that summary judgment is appropriate on Plaintiff's claims for bad faith, punitive damages, and extra-contractual damages.

As stated above, Allstate has also filed a motion exclude Plaintiff's expert witnesses [61] who would testify in support of Plaintiff's position in this case. However, the Court finds that Allstate's summary judgment motion can be resolved without a ruling on the *Daubert* motion.

**A. Contractual Damages Claim**

Plaintiff seeks contractual damages for the total loss of his home; he seeks the difference unpaid between the total value of his home and the amount paid by Allstate on his insurance claim. Allstate argues that Plaintiff has been paid the appropriate amount under the subject policy, because his home was not a total loss, but was repairable. Whether Plaintiff's claim for contractual damages survives summary judgment is dependent on whether a genuine dispute of material fact exists on the issue of the extent of the fire loss and whether the home could reasonably be repaired.

In Allstate's motion for summary judgment, Allstate argues that even if Plaintiff's experts were allowed to testify, their testimony would be that Plaintiff's personal property could be repaired. Allstate cites to an excerpt of testimony from Plaintiff's expert Johnny Harber that Plaintiff's home "could be" repaired, *see* Allstate's Mem. Br. Supp. Mot. Summ. J. [64] at 9 (citing Harber's Dep. [63-13] at 27), and to an excerpt of testimony from Plaintiff's expert Kevin Senter that Plaintiff's home "can be repaired," *see id.* (citing Senter's Dep. [63-14] at 19). Allstate argues that "Plaintiff cannot dispute that . . . a substantial remnant above the foundation . . . can be repaired[] and cannot produce any estimate or engineering report to dispute the fact that monies already paid or tendered to him by Allstate could repair the house to its condition at the time of loss." *Id.* Allstate further argues that Plaintiff testified in his own deposition that he would rely on the testimony of his experts Mr. Harber and Mr. Senter to dispute Allstate's position that the house could be repaired. *Id.* (citing Pl.'s Dep. [63-15] at 46). Allstate maintains

5

that due to all of the foregoing, no genuine dispute of material fact remains as to whether Plaintiff's home was a total loss or was repairable; Allstate maintains that the evidence undisputedly demonstrates that the experts for both Plaintiff and Allstate agree that Plaintiff's home is repairable.

Plaintiff argues in his response to the motion for summary judgment that his experts will provide opinion testimony that his home was totally destroyed and that whether his home was totally destroyed or is repairable is a fact question for the jury. Specifically, Plaintiff cites testimony by his proffered experts Mr. Senter and Mr. Harber that even if repair of his home is technically possible, repair would not be financially reasonable or practical. Pl.'s Mem. Br. Supp. Resp. Opp'n to Allstate's Mot. Summ. J. [74] at 2, 5–6 (citing Senter's Dep. [73-1] at 12–14, 23, 24; Harber's Dep. [73-2] at 17–18, 20–25, 26, 30). Plaintiff argues that Mississippi's valued policy statute is intended to prevent what Allstate attempts to do in this case, "that is[,] deny that the home is worth the amount [Allstate] declared in the [subject] policy." *Id.* at 3. Plaintiff further maintains that "[a]ny savings that could possibly result from salvaging, repairing[,] and reusing some lumber[] would be offset by the additional labor cost incurred in removing those pieces, mold and mildew remediation of those pieces[,] and cost to retrofit those pieces with new construction." *Id.* Plaintiff maintains that under Mississippi law, substantial reusable remnants are required for the loss to not be a total loss. Plaintiff also states that a jury question would remain on whether it would be reasonable to attempt to dismantle, repair, and reuse a few studs and floor joists in the structure. Plaintiff maintains that he has raised a genuine dispute of material fact on whether his home was totally destroyed based on the Federal Rule of Civil Procedure 30(b)(6) deposition testimony of Christopher Daffin that "at most there would be a potential savings of only $4,300.00 (or only about 1.2% of $355,563.00 total value) by

attempting to salvage and reuse remnants of the building materials in the original part of the house." *Id.* at 7–8; *see* Allstate's R. 30(b)(6) Rep. Daffin's Dep. [73-3] at 88–89. Finally, Plaintiff cites in support of his position the deposition testimony of Allstate's expert witness Gary Campbell, who "estimates potential savings only slightly higher at about $5,700.00 (7% deduction on original structure)." *Id.* at 8. The focus of Plaintiff's argument appears to be that even if his home is repairable, it would be not be cost efficient to repair it instead of rebuilding it new.

The Court finds as follows. Mississippi's value policy statute provides:

> No insurance company shall knowingly issue any fire insurance policy upon property within this state for an amount which, together with any existing insurance thereon, exceeds a fair value of the property, nor for a longer term than five years. When buildings and structures are insured against loss by fire and, situated within this state, are totally destroyed by fire, the company shall not be permitted to deny that the buildings or structures insured were worth at the time of the issuance of the policy the full value upon which the insurance is calculated, and the measure of damages shall be the amount for which the buildings and structures were insured.

MISS. CODE. ANN. § 83-13-5.

The issue of whether a plaintiff has suffered a total fire loss or a partial fire loss is often a question of fact for the jury. *Home Ins. Co. v. Greene*, 229 So. 2d 576, 579 (Miss. 1969) (citing 15 R. ANDERSON, COUCH ON INSURANCE 2d §§ 54:57–54:73 (2d ed. 1968); 6 J. APPLEMAN, INSURANCE LAW AND PRACTICE §§ 3821, 3822 (1942)). The Mississippi Supreme Court has stated:

> "Where the line is to be drawn between these two conditions is, in each particular case, a question of fact. . . . In arriving at a determination of what a prudent owner would do under such circumstances, it is proper to consider not only the condition of the walls standing, whether they are suitable, in place, to be used as a part of the reconstruction, but also the relative value of such walls,

> in place, as compared with the cost of rebuilding. It does not follow that, because some part of the remnants may be utilized, in place, there is not substantial and total destruction and loss. The law will not take note of trifles in this respect. It follows that there must remain a substantial part of the building in place, which, with reasonable repairs, can be used in its reconstruction. What such substantial part is is a question of fact depending upon the nature and cost of the structure and the character and condition of the remaining parts."

*Id.* at 578 (quoting *Franklin Fire Ins. Co. v. Brewer*, 159 So. 387 (Miss. 1935)).

In the case *sub judice*, the Court finds that genuine disputes of material fact exist including, but not limited to, whether Plaintiff's home was a total loss or whether it was reasonably repairable. Therefore, Allstate's summary judgment motion must be denied on this ground.

### B. Bad Faith, Punitive Damages, and Extra-Contractual Damages Claims

Second, Allstate argues that even if summary judgment is otherwise improper and genuine disputes of fact remain, the Court should grant partial summary judgment on Plaintiff's claims for bad faith, punitive damages, and extra-contractual damages. In support of this argument, Allstate cites Plaintiff's deposition testimony agreeing that Allstate was reasonable to rely on the report that Plaintiff's home was repairable, Allstate's Mem. Br. Supp. Mot. Summ. J. [64] at 16 (citing Pl.'s Dep. [63-15] at 46, 58), and Plaintiff's testimony agreeing that Plaintiff's experts did not produce an estimate or any documentation to Allstate demonstrating that the amount of damage was over the Allstate estimate, *id.* at 16–17 (citing Pl.'s Dep. [63-15] at 42). Allstate further argues that punitive damages and extra-contractual damages would not be proper given that Plaintiff testified in his deposition that there was constant communication between Plaintiff and Allstate or his representative. *Id.* at 17 (citing Pl.'s Dep. [63-15] at 65). Finally, Allstate cites Plaintiff's deposition testimony that the fire and circumstances surrounding it had

8

to be thoroughly investigated. *Id.* (citing Pl.'s Dep. [63-15] at 66). Allstate argues that the record demonstrates no evidence of reckless, wanton, or willful conduct on its part, and thus, that no punitive damages or extra-contractual claim may lie against Allstate in this case. Allstate maintains that this case presents an issue of a "pocketbook dispute." *Id.* at 21. Allstate further maintains that Plaintiff's arguments about the Mississippi value policy statute, claim handling, investigation, and determinations of amounts of coverage in the subject policy are irrelevant as they were not pled. Allstate's Reply Supp. Mot. Summ. J. [77] at 9.

Plaintiff argues in response that Allstate's "extreme positions and conduct to avoid paying the full amount create[]" genuine disputes of material fact on Plaintiff's punitive damages claim. Pl.'s Mem. Br. Supp. Resp. Opp'n to Allstate's Mot. Summ. J. [74] at 2. Plaintiff maintains that Allstate "shows gross negligence in taking position otherwise" than that Allstate should pay the total value of Plaintiff's home. *Id.* at 8. Plaintiff further maintains that Allstate has acted "[i]n bad faith defiance of the law and bad faith defiance of its own policy" in contending that "the house was worth less than half of the value stated in the [subject] policy." *Id.* Plaintiff concludes that Allstate's denial of Plaintiff's insurance claim for total fire loss was bad faith denial of his claim subject to punitive damages.

"Under Mississippi law, '[p]unitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort.'" *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1398 (5th Cir. 1986) (citing *Progressive Cas. Ins. Co. v. Keys*, 317 So.2d 396, 398 (Miss. 1975)); *accord Wilson v. State Farm Fire & Cas. Co.*, 761 So. 2d 913, 921 (Miss. Ct. App. 2000) (citing *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988); *Standard Life Ins. Co. v. Veal*, 354 So. 2d 239, 247–48 (Miss. 1977) ("In order for the issue of punitive damages to

9

be submitted to the jury[,] the trial court must determine that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and (2) the insurer committed a wil[l]ful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.")). "In applying this rule in diversity cases arising under Mississippi law, [the Fifth Circuit] has held that the relevant inquiry is whether the insurance company had a justifiable reason or arguable basis under Mississippi law for denying a valid claim"; the determination of whether a punitive damages claim can go to a jury is made by " 'the evidence in each particular case.' " *Tutor*, 804 F.2d at 1398 (citing *Miss. Farm Bureau Mut. Ins. Co. v. Todd*, 492 So. 2d 919, 933 (Miss. 1986); *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 249 n.2 (Miss. 1985)). "[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Id.* at 1399. *See, e.g., Aetna Cas. & Sur. Co. v. Day*, 487 So. 2d 830, 832–34 (Miss. 1986) (no punitive damages in case of dispute in coverage and delay in payment); *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321, 322 (Miss. 1980) (award of punitive damages improper when insurer legitimately disputes the amount due under the policy); *see also Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 391 (Miss. 1978) (dispute over method of determining amount due under the policy did not entitle insured to punitive damages).

Allstate makes a strong argument in support of its summary judgment motion on Plaintiff's bad faith, punitive damages, and extracontractual damages claims. However, the Court finds that it should hold in abeyance Allstate's motion for summary judgment on the bad faith, punitive damages, and extracontractual damages claims until such time as Plaintiff has concluded its presentation of evidence at trial on compensatory damages.

10

With respect to Allstate's motion for bifurcation of proceedings, the Court finds as follows. Motions for bifurcation of trial are governed by Federal Rule of Civil Procedure 42(b). *Briggs v. State Farm Fire & Cas. Co.*, 673 F. App'x 389, 390 (5th Cir. 2016) (per curiam). Rule 42(b) provides as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). " 'A motion to bifurcate is a matter within the sole discretion of the trial court . . . .' " *Briggs*, 673 F. App'x at 390 (quoting *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)). In the event the Court holds at trial that the bad faith, punitive damages, and extracontractual damages claims are appropriate in the case *sub judice*, Allstate's motion to bifurcate proceedings [65] shall be granted and the claims shall be bifurcated pursuant to Mississippi law.

## *IV. Conclusion*

In sum, for all of the foregoing reasons, Defendant Allstate Vehicle and Property Insurance Company's motion for summary judgment or, in the alternative, for partial summary judgment [63] is DENIED IN PART AND HELD IN ABEYANCE IN PART, as follows: DENIED with respect to Plaintiff Jamie Whitfield's contractual damages claim, as genuine disputes of material fact exist that preclude summary judgment on that claim; and HELD IN ABEYANCE with respect to Plaintiff's bad faith, punitive damages, and extracontractual damages claims until such time as Plaintiff has concluded the presentation of evidence in trial of compensatory damages.

Defendant's motion to bifurcate proceedings [65] is HELD IN ABEYANCE until such time as the Court has determined the appropriateness of the issue of bad faith, punitive damages, and extracontractual damages at trial. In the event the Court holds at trial that Plaintiff's bad

faith, punitive damages, and extracontractual damages claims are appropriate in the case *sub judice*, the Court will bifurcate the claims according to Mississippi law.

Defendant's *Daubert* motion to strike expert designation and testimony of Plaintiff's experts Kevin Senter and Johnny Harber [61] shall be scheduled for an appropriate pretrial hearing.

An order in accordance with this opinion shall issue this day.

THIS, the 10th day of August, 2017.

/s/ Sr. H. Davidson
SENIOR U.S. DISTRICT JUDGE